Good morning, members of the panel. Emmett Fitzpatrick for the defendants and appellants here, David Randall Associates, Inc., and Raymond Miley III. I've requested three minutes for rebuttal, if that's permissible. This is not the Melrose Hotel case. And Melrose Hotel cannot reasonably be read to stand for the principle for the prediction that the Pennsylvania Supreme Court would not permit alternative negligence pleadings in a TCPA case. The Melrose Hotel Well, why were the damages here fortuitous or unexpected? Because the defendants had nothing to do with the procedure of advertising that they had agreed to, that they had contracted for. They knew nothing about that whatsoever. And the distinction with and salient. In Melrose, the court found that Melrose carried out all of the TCPA activities. Did we, did this court deal on appeal in a precedential manner with Melrose Hotel? Did it? Did we issue a precedential opinion in Melrose? It came up to us. Yes, sir. I mean, Melrose is an Eastern District case. As far as I know, it's precedential. Well, Judge Schiller's opinion is. Judge Schiller's opinion is. Well, Judge Schiller's opinion is public, but it's not precedential. This court adopted his opinion. That's what I'm asking you. How did we do that? You adopted the entire opinion of Judge Schiller. How? Did we issue a precedential opinion? It's one I haven't seen. It was a 503 Fed 339, so it has to be precedential. Yes, I'm looking at a copy of the opinion, and it does not have any non-precedential statement. Did we adopt it? I think, was it Judge Slover? She wrote the opinion. Yes. Slover, Smith, and Warren. Smith was a certain guy on my right here. This is probably why. Well, this was her statement, Your Honor. It's a judgment order. We've reviewed the briefs filed by the parties, heard oral argument on this matter. You get my point. This court has not written in a way that adopts the reasoning set forth in Melrose. So I've had a hard time figuring out from day one why such a big deal was being made of Melrose, because it's not a precedential opinion. It doesn't guide this court. It doesn't bind this court. We did nothing but affirm. Very well, sir. If that's Your Honor's observation. I just took it for what it said. For the reasons set forth by the district court, its judgment will be affirmed. So my assumption was this court adopted that. But if that's not correct. There's a former, now deceased, but famous judge from the Eighth Circuit by the name of Richard Arnold that would argue strongly that that is precedential, even though you're adopting the reasoning of the district court. The point is there's no full explanation as to our circuit considering the matter. For whatever reason, it is not an NPO, clearly. It's not in the federal appendix. It is in the federal report. The point is you've got a district court affirmed by our court decision in Melrose. And what you have, you're trying to say that there's a different view under Pennsylvania law, but that's a Pennsylvania Commonwealth Court, correct? Or a court of common pleas, right? The Brethren case. The Brethren case, correct. So we don't really have anything from a Pennsylvania appellate court, nor do we have, obviously, anything from the Pennsylvania Supreme Court. And the reasoning of Judge Schiller in Melrose, pretty good reasoning. What would you argue is wrong with that reasoning, in this case, to show that you do have a, quote, occurrence, which means an accident? In my view, there was absolutely nothing wrong with Judge Schiller's reasoning as to the facts in that case. The fundamental difference is that Melrose selected all of the recipients. The only act that was carried out by a third party there was a non-discretionary ministerial act. The judge in Melrose specifically find that Melrose knew precisely where the faxes would go. It paid only for the faxes that reached their intended destination. It warranted, and this is very important, there was a contract between Melrose Hotel and its third party provider that just sent the faxes, whereby Melrose specifically warranted that it would comply with all laws, including the TCPA. That doesn't exist here. The court said that Melrose didn't take any steps to ensure that it fulfilled those contractual obligations. I mean, your argument, isn't it just really kind of a CYA argument? We're going to hatch this scheme. We're going to hand it off to you, and you do the details. Your client wanted to make sure people got faxed, right? They didn't just say, we want to advertise generally, do whatever you want to get us there. It was more specific than that. I understand they didn't pick out individuals and say fax to him, fax to him, fax to him, but the defendants here were very involved in it, right? The defendants here were solicited by a third party advertising company to send these faxes, and they knew nothing about the TCPA or about this company's alleged... That's a factual issue, and I would like to... The reason I tried to get off Melrose is because aside from the reasoning, whether it's sound or not, it's not a binding precedent. Notwithstanding, what actually the red brief begins by saying that, and then citing to the district court opinion. That was my point. But more importantly, isn't the most important thing for us to be looking at is the complaint? Yes, sir. What's in the complaint? The complaint, please... So, first of all, how is this case about property damage within the meaning of the policy? That's already been found by the Melrose court, and I think the reasoning applies. Property damage alleged is when there's a violation of the TCPA, then there's an improper use of a party's paper and toner. Now, isn't there a clear intent by the parties here not to provide coverage for TCPA violations? It's set forth in the policy. Yes, sir. Okay. Now, what factual allegations in the complaint support your argument that David Randall Associates could be found to have acted negligently? The use of standard negligence language that's pled every day in tens of thousands of cases, new or should have known. That means two things. It means intent or it means negligence. Didn't Judge Schiller deal with that in Melrose? He did deal with that, and I don't have a dispute on that basis. Judge Schiller found under the specific facts of that case that notwithstanding that language, it could not support a negligence claim because of the activities that Melrose itself undertook. Now, let's back up for a second. Maybe you're right on should have known, but you can't be right on whether if they knew. If the complaint says that they knew that this was being done, that ain't got nothing to do with negligence. That expressly states an intentional allegation, but it's in the alternative. It's a pleading in the alternative. It's a common pleading in the alternative. Now, the difference here is this. In particular, it's that the complaint also alleges the presence and actions of third parties. It says it twice. Paragraph 12A, third parties, third parties. And I want to point out to the court that while the Brethren case was a court of common pleas case, it correctly determined the Supreme Court's view of the advertising injury exception, which now was upheld. And the Brethren case was also cited recently. This is not in my brief, so I want to bring it here. Can we get back to what's in this complaint? Yes, sir. I mean, that to me is first and last what's going to determine whether you win or lose. And aren't there allegations in the complaint to the effect that DRA and Miley intended to cause exactly what occurred here? By that, I mean the tens of thousands of faxes would be sent to the recipients. I mean, doesn't that indicate that the loss was expected or intended from the standpoint of the insurer? Can I just add to that? It isn't – there's no – you don't have to have the intent to harm. You just have the intent to send the faxes. Yeah. To do the particular act. There is no property – You don't have to intend a particular legal violation. Exactly. There's no property damage. Unless there's a violation of the TCPA. There is no property damage unless there's a violation. There's just advertising. In fact, many courts have held – That isn't what they have to intend to do to violate the TCPA. In order to have the kick in for the insurance coverage. I believe the pleader, the plaintiff, intended to and did allege alternative theories of negligence. And the only way and the only reason that the Melrose Court excluded the negligence was because of the unique factual scenario in that case. That Melrose actually did everything itself. So the court was saying, on these facts, you aren't really alleging a negligence claim. But on our facts, which are the same as the Brethren facts and the same facts that were recently determined by the Michigan Appeals Court in Erie Insurance Exchange versus Lake City Industrial Products, 2012, Michigan, at Lexus 973. Appeal denied 2013, Michigan, Lexus 132, February 2013. In that case, the Michigan court was deciding Pennsylvania law. The issue was exactly this. Supreme Court rule on our facts. The exact same facts as this complaint. Not the facts in the Melrose complaint. And that court said, the complaint's reference to a third party's potential involvement and the accusations of negligence suggest that the complaint is not limited to an accusation that Lake City intentionally faxed American Copper, intending to cause harm. Rather, as the trial court concluded in Brethren, and I'm admitting the citations, it is possible that Lake City did not intend or expect its advertisements to be sent to unwilling recipients. And Maxie Leeds, parentheses, the third party sender in this case, may have sent the facts to unwilling recipients without Lake City's knowledge or permission. That's the exact same allegations that are in this case. That's the exact same possibility that is in this case. And all I'm saying is it's not reasonable pursuant to the requirement to analyze the pleadings under Federal Rule of Civil Procedure 8E to judge the pleadings on the basis of doing justice. It's not possible for the court on the allegations of our complaint to exclude the possibility of negligence as was excluded in the Melrose case. Let's hear from Mr. Salzer and we'll get you back on rebuttal. Thank you. Good morning. William Salzer for the APALE. I'd like to first address Judge Smith's remarks with regard to the issue of the precedential nature of Melrose. Your brief is the reason I raised it, because on page 8, the first sentence of your argument is the district court correctly applied a governing precedent. Melrose ain't governing precedent, even though we affirmed it. We did so in a judgment order without adopting any of the requirements. Under IOP, and you cited to the EDPA case first. Well, under IOP 9.1, the touchstone for whether it is precedential, whether it is a reported opinion, that was a reported opinion of this court, because they actually I have a pretty good handle on what our IOPs say, so I just refer you to the judgment order, see what's in it, and see what in the language of the judgment order supports your position. I think we certainly believe it's governing precedent, but the first point that I'd like to make is The point is, when was Brethren? Brethren was decided after Melrose Hotel, was it not? Brethren is a trial court opinion in Philadelphia that was decided afterwards and did not follow Melrose, did not It was not appealed? It went up on appeal on a different issue. It went up on appeal on the advertising injury coverage question and not the property damage coverage question. So that question did not receive appellate treatment in Pennsylvania. Because, I mean, it would seem that you do have, obviously it's not the Supreme Court, so we don't have to follow it, Pennsylvania Supreme Court. It's not an appellate court. But nonetheless, it's a plausible reading of the statute. Well, let me suggest why I disagree. And in that trial court's opinion, the court did not look at Pennsylvania Supreme Court authority on what is an occurrence. And the landmark case in Pennsylvania is the Kovarner case. And in Kovarner, the court said that the touchstone for an occurrence is a fortuitous chance event. It's not simply whether you've pled negligence, but it's whether there is a risk of injury. And so in Kovarner, we have a builder that's sued for failure to perform on various theories. The court says poor workmanship cannot be consistent with a fortuitous loss. You have a certain degree of control over your workmanship. And therefore, there is no occurrence. That case was then relied upon in the Gambone decision of our Superior Court, where the insured said, well, we didn't intend to cause damage to our customers. And what contractor does intend to do that? The Supreme Court rejected that based on the principle of fortuity. And then more recently, in the Baumhammer's case from our Supreme Court, they once again said that the natural and probable consequences of an insured's act cannot be equated with an accidental injury. All that governing appellate authority was not considered by the trial court in the Brethren case. So I would respectfully submit that it's not persuasive. Well, I thought what you would say, to some extent, is that Brethren, you had the telecommunications network suing Paradise, and then later amending its complaint to sue Canifax, the third party. Whereas in Melrose, that never happened. The plaintiff did not sue the third party. It's true. They did not sue the third party. I don't think it's a meaningful distinction. And in fact, in Melrose- Well, the argument would be that in Brethren, the third party was part of the problem. And therefore, it was the third party that may have done this. That has to be sorted out. Whereas in Melrose, it was strictly on the party that entered into the contract rather than the third party. Well, I think in Melrose, there was evidence that had been presented sort of similar- Actually, that was a softball. I was trying to help you. Yeah, that they went out and hired a vendor. And it's the same argument that we're hearing today, which is, oh, we hired a blast fax vendor. We didn't know that they weren't going to comply with the law. Well, Judge Stiller dispensed with that argument to say, well, ignorance of the law, first of all, is not an excuse. It's not the basis to say that there's an accident. So the presence of the vendor really doesn't matter. Because here in the complaint, we have an allegation that the insured conceived of the scheme, directed it, authorized, ratified the sending of 44,000 fax transmissions to 29,000 different fax numbers. And that's what we need to concentrate on is what is in the complaint. And of course, the appellant has directed this, as you would expect, to the new or should have known language. What should we make of that? Well, you know, let's look at that. Because the should have known language is only to say that, well, you should have known that there was a lack of consent. That's not the same as saying, oh, I believed I had consent and I was mistaken. An insured that doesn't, hires a blast fax vendor, right, and doesn't really give much thought to it one way or the other might say, well, I thought you guys were taking care of it. Which is to say that looked at in that vein, it's not an allegation of negligence. It's not an allegation of an accident. It's not an allegation of an accident because you hired a vendor with the object of sending faxes that are going to be printed in red. And the allegation is that it went out to, you know, 29,000 different recipients. So whether you realized or didn't realize that you were violating the law or realized or didn't realize that there was consent, which is really tying into the should have known, is really not material. Because it's not an accident, it's not a fortuity that the damage, the fax machines printing out paper would result from your conduct. It is, in fact, the expected consequence. You want the recipients to read your advertisement. So there's no accident there. Now counsel says, well, we didn't realize that they were breaking the law. This vendor was breaking the law. That doesn't supply the fortuity. Whether you realized you were breaking the law doesn't show that your conduct fortuitously resulted in the injury. It simply reflects that you didn't know about the law. And that argument was the same argument that was put forth in Melrose. In fact, there's another decision of this court in Brothers International, which I believe Judge Sigaris was part of that panel. Now that case was under New Jersey law. It's the same arguments that were presented in that decision. And the same holding, which is that the natural and probable consequences of this conduct cannot be considered to be accidental. And so there really isn't a meaningful basis to distinguish these cases. But even more importantly, even after Melrose, which was prior to Kovarner, it's prior to the Baumhauer's decision of our Supreme Court in Pennsylvania. Those decisions buttress the analysis that you look at the factual allegations to determine are they consistent with some fortuitous loss. They're not. We presented the complaint in Melrose Hotel to the lower court as part of our pleadings, and I would submit that they are essentially the same. There are some variations, but they are essentially the same factual contentions. So I think the lower court correctly applied the governing precedent as applied to this case. Thank you for the questions. Otherwise, I will close. No, thank you very much. There is no property damage unless there's a violation of the TCPA. It is decidedly not the law that it's illegal to send advertising faxes. It's only a violation and only property damage if it turns out that there wasn't. But I think we have to end up looking back at the point that Judge Smith made. We have to look at their complaint, don't we? I mean, you do, but the courts, the Melrose court and the other courts have gone beyond that. So that's why they've gone beyond that to explain perhaps the reason why they viewed it in that way. But you do have to look at the four corners of the complaint. And if you look at the four corners of the complaint, you only are able to get to the Melrose result if you exclude what the complaint itself says. It says knew or should have known. It says there were third parties involved. Just as a matter of logic, take off the should have known. Yes. If it's known, therefore, it cannot be fortuitous, correct? Just as a matter of logic. Correct. If it's known, it would be a violation of law. You would prove your case. If you go to trial and you knew the guy was driving. Or should have known. Should have known as negligence. Is extraneous to if they alleged that DRA knew or Miley knew, then that means it was intentional. And it means they pled a fallback. That if they're unable. Knew was not the fallback. No, should have known as the fallback. I'm saying forget the fallback. If it's the word or is it's disjunctive, correct? Yes, sir. So if it's if they said new, you can't say new and should have known. But the point being that just looking at it from a purely logical point of view that DRA and Miley knew that these faxes were going out. That's that's game set and match, isn't it? No, it's not. And that's not the complaint. And the question is not new. The facts were going to come up. What is not the complaint? It's not that he knew the the faxes were going out. It's that he knew he was violating the TCPA. OK, that's the knowledge that that brings any kind of liability that hurts you, right? If he knew it. Yes, of course. If I lose on an intentional claim, that's fine. But it's no different than an auto accident case where I say that the guy hit my client. He knew he was driving with with a set of brakes that were faulty or he should have known because his light came on or whatever. I have duly pled in the customary way two different two different allegations. And I'm entitled to jury charges on both. If you find that he knew he's he's liable. If you find that he should have known he's liable. Certainly, you would get jury charges on both negligence and and intent. All I'm saying is you can't exclude the negligence that's been pled here. And I and I cite to the cases that the most. But it's pled in the alternative. Yes, sir. And I and I cite to the post Melrose cases that that I mentioned. And I want to just leave you with this. This is not just Fitzpatrick's distinction. I'm not the only one that makes this distinction. Not only did the the Lake case, the Erie Insurance versus Lake City make that distinction, the Brethren case make that distinction. But this court, this district court made the distinction, as did the Maryland Casualty Court. In both cases, they said there's not the third party allegation that's in this complaint here. And they made that distinction because they knew that made a difference. That's the only reason you distinguish it. If you if you're the only reason for the for the distinguished. Thank you. Thank you. Thank you very much, counsel. Very well presented arguments. And we'll take the matter under advisement.